In re J. GUS LALLANDE, INC., Debtor.

CARIDEV, INC., Plaintiff,

v.

Hans Lopez STUBBE, Trustee for Debtor's Estate, Defendant.

Bankruptcy No. B–86–00030(ESL). Adv. No. 92–0036.

United States Bankruptcy Court, D. Puerto Rico.

May 20, 1994.

César A. Hernández Colón, Ponce, PR, for Caridev, Inc.

Henry Vázquez Irizarry, García & Fernández, Hato Rey, PR, for defendant/Trustee.

## OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

Before the Court is a Motion for Summary Judgment (docket No. 9, filed on January 8, 1993)[1] submitted by the trustee for the debtor J. Gus Lallande, Inc. (Lallande) against plaintiff Caridev, Inc. (Caridev) in an action involving a contract for the sale of property by the trustee on behalf of debtor estate to plaintiff corporation. Caridev submitted its Opposition and Cross–Motion for Summary Judgment (docket No. 11, filed on February 9, 1993) to which the trustee submitted a Reply (docket No. 13, filed on April 20, 1993).

---

1. *See, also,* Statement of Material Facts ..., docket No. 10, filed on January 8, 1993.

## Introduction

On March 3, 1988 the trustee for Lallande executed the sale of property to Caridev located in Reparada Industrial Park, Ponce, Puerto Rico for the sum of fifty-five thousand dollars ($55,000).[2] The sale was negotiated through Willie Vicens Realty, who had been commissioned by the trustee to sell the property in question. It appears that the president of Caridev initiated contact with the realtor for the purchase of property in Ponce to build a warehouse.

At the time of the sale, the parties were not aware that the property was located in a flood prone zone.[3] See Trustee's Statement of Material Facts ..., docket No. 10, p. 2 ¶ 3 and exhibit No. 2, p. 9 ¶ 29. This was first learned by Caridev from a letter dated October 13, 1992 sent by the Puerto Rico Planning Board (Junta de Planificación). The letter notified the buyer that in 1981 the area had been classified by FEMA (Federal Emergency Management Agency) as a flood zone and that this classification was adopted by the Planning Board on July 22, 1987. See Trustee's Statement of Material Facts ..., docket No. 10, exhibit No. 2, p. 9 ¶¶ 29 & 30.

On March 2, 1992, plaintiff filed an action in the Superior Court of Puerto Rico, Ponce Part, requesting that the contract for the sale of the property be declared null and void pursuant to title 23 L.P.R.A. § 225g. The case was dismissed without prejudice by Order of the Court dated March 17, 1992 in response to plaintiff's Motion for Voluntary Dismissal. See Trustee's Statement of Material Facts ..., docket No. 10, p. 3 ¶ 11 and exhibit Nos. 3 & 4.

On April 8, 1992, Caridev filed a Complaint before the United States Bankruptcy Court for the District of Puerto Rico whereby Caridev seeks to have the sale contract be declared null in void. Plaintiff alleges that the sale of property in floodable zones for the purpose of construction is prohibited by the Floodable Zone Building Control Act, effective September 27, 1961, title 23 L.P.R.A. § 225g. Moreover, plaintiff avers that the sale should be declared null and void because consent by both parties was lacking in that they were acting under the mistaken belief that the property could be used to build a warehouse. See Complaint, filed on April 8, 1992, p. 2 ¶ 6 & p. 3 ¶ 8.

## Discussion

The trustee asserts several grounds for summary judgment including: (1) plaintiff's right to assert this action is extinguished pursuant to Article 1253 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3512, as it was filed more than four years from the date of the sale; (2) plaintiff is prohibited from asserting error as a basis to void the sale due to plaintiff's inexcusable neglect of failing to exercise due care and diligence in investigating the status of the property; and (3) title 23 L.P.R.A. § 225g, dated September 27, 1961, only prohibits the construction of family dwellings in floodable zones rather than all construction.

In its cross-motion for summary judgment, plaintiff alleges that the defendant improperly states the issue. Accordingly, it argues, the first two arguments rest on grounds which are only applicable to contracts which are voidable and the third is the result of misinterpretation of the statute. Rather, plaintiff alleges, the contract in question was executed in direct violation of the law and, therefore, it is null and void ab initio. Furthermore, the law does not prescribe a finite period of time for a party to bring an action to void an illegal contract.

The first issue to be resolved by the Court is whether the contract for the sale of property is void or merely voidable. Each classification has a distinct legal effect. A contract is voidable when the defect can be cured or ratified by an effected party while a void contract is not curable for reasons of public policy. Millán v. Caribe Motors Corp., 83 P.R.R. 474, 483 (1961). See also Zayas v. Orraca, 80 P.R.R. 327, 339 (1958) quoting, 3 Castán, Derecho Civil Español, Común y Foral, p. 440 (8th ed. 1954):

Unlike absolutely void, which implies such faultiness in a contract as to render it

---

**2.** The trustee was appointed by Court Order on January 8, 1988. See Trustee's Statement of Material Facts ..., docket No. 10, p. 1 ¶ 1.

**3.** Caridev admits that it did not investigate the matter prior to the purchase. See Trustee's Statement of Material Facts ..., docket No. 10, exhibit No. 2, p. 8 ¶ 22.

incapable, *ipso jure*, of producing its proper effects, voidableness means milder fault—derived, above all, from certain defects of capacity or will—which gives rise to an action of nullity or of challenge, which, if successfully prosecuted, produces the destruction of the act with retroactive force.

(emphasis original).

■ A contract is voidable where a party is the victim of his own inexperience or error, or subject to violence, intimidation and deceit when contracting. *Zayas*, 80 P.R.R. at 339. The right to annul the contract thereby is optional but must be exercised within four years from the date of consummation pursuant to title 31 L.P.R.A. § 3512. *Id.* A voidable contract has the force of a valid contract until it is declared null by the court. *Id.*

■ On the other hand, a contract is considered "nonexistent" or "wholly void" when one of the elements essential for formation is missing, or where the contract was made in violation of a legal prescription or prohibition established for reasons of public order. 3 Castán, *Derecho Civil Español, Común y Floral,* p. 437–38 (8th ed. 1954). Unlike voidable contracts, void contracts may not be ratified or validated by a lapse of time; a void contract has no legal effect and is not subject to the prescription of title 31 L.P.R.A. § 3512. *Guzmán v. Guzmán; Rodríguez, Int.,* 78 P.R.R. 640, 649 (1955).

■ Contracts executed in violation of the law are governed by title 31 L.P.R.A. § 4 which states, in pertinent part:

Acts executed contrary to the provisions of the law are void except where the law preserves their validity.

The void acts referred to in 31 L.P.R.A. § 4 are those which are void per se or nonexistent. *Corporación Azucarera v. Sugar Board,* 77 P.R.R. 374, 386–87 (1954). The Supreme Court of Puerto Rico has consistently held that contracts executed in violation of the law are void and the contracting parties have no right to performance thereunder. *Reyes v. Jusino,* 116 Of. Trans. of the Op. of the S.Ct. of P.R. 338, 353–54 (1985). *See also Rubio v. Roig,* 84 P.R.R. 331, 337 (1962); *Gúzman,* 78 P.R.R. at 644; *Sanchez v. Coll,* 69 P.R.R. 863, 865 (1949).

The provisions governing the sale of land in floodable areas is found in the Floodable Zone Building Control Act, title 23 L.P.R.A. § 225g effective July 1, 1975,[4] which states in pertinent part:

In "Floodable Zones unfit for building" it shall hereafter be unlawful:

(a) To erect any construction or structure whatsoever.

(b) To sell, lease or otherwise convey lands in said zones for purposes of building thereon.

(c) To make enlargements to any structure located in said zones ...

(emphasis added).[5]

---

4. This statute was amended, effective March 8, 1988 as follows:

In Floodable Zones it shall hereafter be unlawful:

(a) To erect any construction or structure whatsoever, deposit land fill, carry out substantial improvements to existing construction or structures or other developments in Floodable Zones that have not met the requirements and provisions of the Floodable Zones Regulations, counting from the effective date thereof.

(b) To sell, lease or otherwise convey land in said zones without warning the potential lessee, occupant or title-holder thereof, through any lawful means, that he must meet the requirements and provisions of the Floodable Zones Regulations for any construction, use or development. Said warning shall be included on the written deed of the transaction in question.

Title 23 L.P.R.A. § 225g. Although a fair amount of argument is expended on which stat-

ute effects the dispute at hand, it is apparent that this amended version is not applicable as the effective date was subsequent to the sale of the property. *See* title 31 L.P.R.A. § 3.

5. It should be noted that a section of the Act does indicate penalties for violation of the statutory mandate, however, these provisions do not refer to instances involving sales contracts. Section 225h states:

(a) Any person who shall willfully, unlawfully and maliciously violate section 225g of this title shall be guilty of a misdemeanor and upon conviction punished by a maximum fine of five hundred (500) dollars or by imprisonment for a maximum term of six (6) months, or both, in the discretion of the court.

(b) Whenever the violation consists in having constructed or enlarged any house located in a "Floodable Zone unfit for building", the sentence imposed shall, in addition to the penalty

■ The trustee presents several arguments which allegedly remove this contract for the sale of property from the realm of title 23 L.P.R.A. § 225g. He reasons that because § 225g(b) does not create an affirmative duty to inquire as to the use of the property when it is sold, "[o]bviously, the purpose of this Article was to protect buyers against sellers' misrepresentations in relation to floodable conditions of properties ... [t]herefore, the buyers' purpose to acquire certain properties would be completely irrelevant and beyond the scope of the application of this Article." (emphasis added). *See* Trustee's Reply ..., docket No. 13, p. 3 ¶ 5. The trustee cites no authority for this conclusion.

The trustee's analysis that the alleged absence of a seller's duty to inquire into buyer's purpose leads to the conclusion that the statute merely provides protection against seller's misrepresentations regardless of buyer's purpose is unconvincing. Admittedly, the plain language of the provision doesn't speak to whether an affirmative duty exists, however, it is absolutely clear from the plain language of the statute that the buyer's purpose is critical to the application of subsection (b). Even utilizing the broadest rules of construction, the absence of an affirmative duty in the statute does not support the reading that buyer's purpose is totally irrelevant as the trustee suggests.

More importantly, however, the trustee's interpretation suggests that even where the buyer's intention is known, the seller need only remain silent throughout the process to avoid the consequences of the illegal act of selling the property in a floodable zone for the purpose of construction. Indeed, to conclude that this statute should only take into account whether the seller made any misrepresentations about the property, as suggested by the trustee, could effectively render the subsection completely useless.

Furthermore, in addition to promoting selective enforcement, the trustee's interpretation would frustrate the important public goals which serve as a basis for this legislation. These public policy considerations are articulated in the Act as follows:

> It is hereby declared (1) that within and without the urban limits of the town and cities of Puerto Rico there are zones susceptible to flood by rainfall, swells, heavy seas, the overflowing of rivers or brooks and other forces of nature, which affect the life and property of the present and future inhabitants of said zones, as well as the health, safety, peace, comfort, prosperity, economic stability and welfare of the community in general; (2) that to the prejudice of public interest there are located on these zones and are continually being constructed houses and other structures whose occupants or users are exposed, through the effects of the floods, to lose their lives and holdings and to contract diseases that may develop into epidemics, all of which constitute a menace to health, safety, welfare of the community; (3) that the Commonwealth of Puerto Rico is interested in adopting measures directed to reduce or eliminate the loss of lives and property through the effect of floods; (4) that said measures constitute a public purpose for which public funds may and should be expended.

Title 23 L.P.R.A. § 225.[6] Clearly, this statute is designed to protect the public good. These goals should not be treated lightly and such biased and shortsighted application of the statute as suggested by the trustee must be rejected.

Furthermore, in the case at hand, whether an affirmative duty to inquire into the intention of the buyer exists is immaterial in light of the fact that Caridev made its purpose known to the realtor at the outset of negotiations. The undisputed facts show that the realtor who negotiated the sale on behalf of the trustee was informed that Caridev was interested in constructing a warehouse on

---

prescribed in subsection (a) of this section, provide that the structure or enlargement involved be demolished within thirty (30) days following the date on which the judgment rendered becomes final. The court's order shall be carried out by the marshall of he court with the personnel of the Department of Housing.

6. *See, also,* Sen. Comisión de lo Jurídico Civil Report, 4th Ass., 2nd Special Sess. (September 9, 1961) and House Comisión de lo Jurídico Report, 4th Ass., 2nd Special Sess. (August 31, 1961).

the site as clearly indicated in the following interrogatory answer by Caridev:

> To the best of Mr. Ortiz's [president, Caridev] recollections negotiations between the [parties] started when he contacted Willie Vicens Realty in search of a property in Ponce in which to build a warehouse. Said realty firm informed him that it had been commissioned by Mr. López Stubbe, as Trustee for the estate of J. Gus Lallande, Inc. to contact possible purchasers for lot No. 2 of Reparada Industrial Development which would be suitable for such purposes. Mr. Ortiz does not recall if Mr. López Stubbe made any representations as to the conditions (sic) of the property at the time of the sale, but all the persons involved knew the purpose for which the property was being acquired.

See Trustee's Statement of Material Facts ..., docket No. 10, exhibit No. 2, p. 3 ¶ 12.

Rather than dispute these facts, the trustee merely alleges, in effect, that it made no representations as to the condition of the land or that it could be used for building purposes.[7] See Trustee's Statement of Material Facts ..., docket No. 10, p. 2 ¶¶ 4, 5 & p. 3 ¶ 6. Whether or not these allegations are in fact true is of no consequence as the evidence establishes that the seller itself and/or the realtor acting on its behalf knew of the buyer's intention and purpose for making the purchase. In accordance with the law, selling the property under these circumstances was illegal, thereby rendering the contract itself illegal.[8]

■ The only other argument pursued by the trustee which warrants mention involves allegations that § 225g refers to dwellings and residences and not warehouses. To support this argument, the trustee relies upon an opinion issued by the Secretary of Justice in 1971 construing § 225g. See 1971 Op. Sec. Jus. No. 28. With each supporting their own

theory, the parties interpret the meaning of the opinion differently. The trustee contends that the opinion indicates that only dwellings fall within the exclusion of § 225g while the plaintiff suggests that the Secretary states that all structures to be occupied by people are prohibited under the statute.

The Court need not enter into a semantic debate in order to decide the exact meaning of the Secretary's opinion. Simply, to the extent that the opinion advocates that the prohibition in § 225g exclusively refers to dwellings, as alleged by the trustee, it is contrary to the purpose and intent of the statute as expressed by the legislature and must be rejected.

Taking another look at the statement of goals, the entire section of the law is predicated on the following: "that the Commonwealth of Puerto Rico is interested in adopting measures directed to reduce or eliminate the loss of lives and property through the effect of floods." Title 23 L.P.R.A. § 225. Clearly, the policy considerations behind the Act establish protection for the lives of people within the floodable zone in addition to property and the resulting economic instability within the community due to the loss of business. In addition, while warehouses do not provide shelter in the same way as dwellings, it is no doubt that people do occupy the premises oftentimes in concentrated numbers and for many hours.

Accordingly, the Court rejects the Secretary's construction insofar as it is contrary to the clear intent of the provision. Martínez v. Martínez, 78 P.R.R. 220, 225 (1955) (administrative construction may not alter the clear and precise language of a statute).

Finally, the portion of the Act which refers to the powers and duties of the Department of Housing in relation to the enforcement of

---

7. The trustee also suggests that it is significant that plaintiff failed to "accuse defendant ... of fraud, dolus, deceit or misrepresentation in relation to the floodable condition of the property." See Trustee's Reply ..., docket No. 13, p. 3 ¶ 4. In fact, plaintiff admits that it "has no basis to affirm that defendant Hans López Stubbe withheld information from plaintiff about the property and, on the contrary, plaintiff believes that Mr. López Stubbe, in good faith believed that the property could be used for plaintiff's stated pur-

poses." See Trustee's Statement of Material Facts ..., docket No. 10, exhibit 2, p. 4 ¶ 18. Contrary to the trustee's implications, the Court attaches absolutely no relevance to these facts as they are only pertinent where a contract is merely voidable and not void.

8. Furthermore, it should be noted that ignorance of the law does not absolve a party from liability for failure to comply therewith. See Title 31 L.P.R.A. § 2.

the statutory provisions includes structures related to industry further supporting the conclusion that the prohibition of construction contained in the Act refers to all types of buildings. Section 225j specifies the following:

> As soon as the Department of Housing is notified of the declaration of a "Floodable Zone", ... it shall make a survey of the works necessary to avert the loss of life and property from the effects of floods. Likewise, it may, if necessary, acquire lands or buildings to facilitate its work or to drain and render unfloodable such lands, according to its organic act and the regulations thereunder and to this chapter.
>
> > Provided, that any owner who, on the effective date of this act, has his only and permanent residence or trade, business or industry constituting its sole means of living, located in the floodable zone, and who evicted or dispossessed under the provisions of this chapter or of the regulations thereunder, shall be entitled to receive an adequate compensation in keeping the value of the structure and to cover his expenses of relocation and eviction.

(emphasis added). It is unreasonable to conclude that while the Department of Housing has the power to take possession of all types of structures located in floodable zones when carrying out the objectives of the statute, provisions prohibiting construction of buildings should only encompass residences.

Accordingly, the Court makes the following findings: (1) the intention of the buyer is of primary importance in the determination of whether the contract for the sale of the property violated title 23 L.P.R.A. § 225g(b); (2) the trustee and/or the realtor which acted on his behalf, knew of Caridev's intention to purchase the property to construct a warehouse making the sale of the property illegal pursuant to subsection (b); and (3) the trustee's reliance upon the Secretary of Justice's opinion construing the statute is misplaced insofar as it concludes that the prohibition only refers to the construction of dwellings, rather than all structures, as this interpretation is contrary to the purpose of the statute. Consistent with these conclusions, the contract for the sale of property is found to be in contravention of the law and, therefore, void.

### *Conclusion*

Therefore, the summary judgment motion filed by the trustee on behalf of debtor, J. Gus Lallande against Caridev, Inc. is hereby denied. Furthermore, Caridev, Inc.'s cross-motion for summary judgment requesting that the contract for the sale of property located in Reparada Industrial Park, Ponce, Puerto Rico, executed between it and the trustee on behalf of debtor J. Gus Lallande be declared null and void is hereby granted.

Accordingly, the trustee for debtor J. Gus Lallande is hereby ORDERED to reimburse Caridev, Inc. the purchase price of fifty-five thousand dollars ($55,000) plus interest.

The Clerk shall enter judgment accordingly.

SO ORDERED.